UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN LORNE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRACTYL HEALTH, INC., HARITH RAJAGOPALAN, and LISA A. DAVIDSON,<br><br>Defendants. | Case No. 1:26-cv-07167-PAE |

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF STEPHEN LORNE AND SEUNGHO JANG FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 5

I. LORNE AND JANG SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ........ 5

A. Lorne and Jang Are Willing to Serve as Class Representatives ........ 6

B. Lorne and Jang Have the "Largest Financial Interest" ........ 7

C. Lorne and Jang Otherwise Satisfy Rule 23's Requirements ........ 8

D. Lorne and Jang Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses ........ 12

II. CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED ........ 12

CONCLUSION ........ 13

CERTIFICATE OF WORD COUNT ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ....................................8

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) ....................................................................................10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ......................................................................................9

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018),
*objections overruled*,
No. 18-CIV-2268 (AT) (SN), 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018)..........................7

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .....................................10

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ....................................................................................10

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).......................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).......................................................................................7, 11

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................7, 13

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992).............................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) .......................................................................................12

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................7

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) .....................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .........................................................................................9

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 112 (S.D.N.Y. 2010) ....9

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ....8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ....12

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)....8

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)....7

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ....11

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ....7, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)....12

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ....11

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) ....11

## **Statutes**

15 U.S.C. § 78u-4 .... *passim*

Private Securities Litigation Reform Act of 1995 .... *passim*

Securities Exchange Act of 1934 ....1, 7, 9

## **Rules**

Fed. R. Civ. P. 23 .... *passim*

Stephen Lorne ("Lorne")[1] and SeungHo Jang ("Jang") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Lorne and Jang as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Fractyl Health, Inc. ("Fractyl" or the "Company") securities between January 13, 2025 and January 29, 2026, both dates inclusive (the "Class Period"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

**PRELIMINARY STATEMENT**

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the Defendants defrauded investors in violation of the Exchange Act. Fractyl investors, including Lorne and Jang, incurred significant losses following the disclosures of the Defendants' alleged fraud, which caused Fractyl's share price to fall sharply, damaging Lorne, Jang, and other Fractyl investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the litigation and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, the Lorne-Goggin Family and Jang, in the aggregate: (1) purchased 163,472 shares of Fractyl common stock; (2) purchased 59,981 net shares of Fractyl common stock; (3) expended $97,275 in net funds on Fractyl common stock; and (4)

[1] Lorne pursues claims in this litigation both on his own behalf and on behalf of his spouse, Vanessa Goggin (together with Lorne, the "Lorne-Goggin Family"), from whom he has received a valid assignment of those claims. *See* Dkt. No. 1-1.

incurred losses of approximately $64,962. *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A. Accordingly, Lorne and Jang believe that they have the largest financial interest in the relief sought in this litigation. Beyond their significant financial interest, Lorne and Jang also meet the applicable requirements of Rule 23 because their claims are typical of those of absent Class members and they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute this Action on behalf of the Class, Lorne and Jang have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Lorne and Jang respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

**STATEMENT OF FACTS**

As alleged in the Complaint in the Action, Fractyl is a metabolic therapeutics company that develops therapies for the treatment of type 2 diabetes and obesity. The Company is developing, *inter alia*, the Revita DMR System ("Revita"), an outpatient procedural therapy designed to durably modify duodenal dysfunction, a pathologic consequence of a high fat and high sugar diet.

During the Class Period, Defendants were highly focused on advancing Revita through Fractyl's "REMAIN-1" study, evaluating Revita's efficacy in maintaining weight loss following the discontinuation of GLP-1 receptor agonist drug therapy. The REMAIN-1 study is designed to

include three distinct patient cohorts: (i) the REVEAL-1 Cohort; (ii) the REMAIN-1 Midpoint Cohort; and (iii) the REMAIN-1 Pivotal Cohort.

At all relevant times, Defendants touted Revita's efficacy as observed in interim data readouts from the REVEAL-1 and REMAIN-1 Midpoint Cohorts, while highlighting data from prior studies that likewise evaluated Revita's ability to reduce weight gain under other circumstances. Defendants variously characterized such data as "groundbreaking", "clinically and statistically significant", and "striking", while highlighting the purported "[c]lear evidence of Revita activity".

In August and September 2025, on days coinciding with the release of positive data readouts purportedly demonstrating Revita's efficacy potential, Defendants announced public offerings of Fractyl securities, reaping tens of millions of dollars in proceeds, piggybacking on the hype generated by these purportedly promising results.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Revita was less effective than Defendants had led investors to believe, and/or operational issues at one or more of the REMAIN-1 Midpoint Cohort's clinical sites compromised the integrity of its efficacy results; (ii) accordingly, Revita's clinical, regulatory, and commercial prospects were overstated, as was the REMAIN-1 Midpoint Cohort's ability to assess Revita's efficacy; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

The truth began to emerge on January 29, 2026, when, during pre-market hours, Fractyl issued a press release announcing six-month data from the REMAIN-1 Midpoint Cohort. The press release disclosed, in relevant part, that "[a]cross the prespecified efficacy population . . . ,

Revita-treated patients experienced a 4.5% weight regain vs 7.5% in the sham arm at 6 months", representing a significantly more modest efficacy result than previously disclosed results and falling short of investor expectations, while stating that "[t]he Midpoint Cohort was not designed to be sufficiently powered for efficacy analysis[.]"

The same day, also during pre-market hours, Fractyl hosted a conference call with investors and analysts to discuss the six-month data from the REMAIN-1 Midpoint Cohort. During the call, Fractyl's Chief Executive Officer, Defendant Harith Rajagopalan ("Rajagopalan"), indicated that issues at one of the REMAIN-1 Midpoint Cohort study sites, which "had higher-than-expected regain across both arms," were at least partly to blame for the cohort's disappointing six-month efficacy results.

Following these disclosures, Fractyl's stock price fell $1.245 per share, or 68.03%, to close at $0.585 per share on January 29, 2026.

The same day, during post-market hours, Canaccord Genuity issued a report on Fractyl, providing additional color on the site-specific issue identified by Defendant Rajagopalan. Specifically, the report cited a "call with mgmt [that] clarified some of the key FAQs around the 'outlier site'", stating that Fractyl "attribute[d] the variability in the 1 outlier site (out of 6) to a relatively less robust diet and lifestyle counseling program", noting that "[t]his site was the first to enroll and hadn't yet set up a dietary center."

Also on January 29, 2026, during post-market hours, Morgan Stanley issued a report on Fractyl, downgrading the Company to an "Equal-weight" from "Overweight" rating and cutting its price target on the Company's stock to $2.00 from $8.00. The report characterized the latest REMAIN-1 Midpoint Cohort study results as "[d]isappoint[ing]", noting that the "[r]andomized 6mo results for Revita in weight maintenance showed trends, but fell short of expectations, raising

questions." Specifically, the report noted that "Revita patients experienced 4.5% weight regain (+1.5% in open label cohort) vs. 7.5% sham (~10% expected)", which "represents a 40% delta vs. sham, below the 50% threshold, suggesting more modest benefits, though was negatively impacted by a single site." Notwithstanding Defendants' "indicat[ion that the] results were negatively impacted by a single site," the report concluded that "we take a more cautious view on the potential of Revita and move to the sidelines", and "[g]iven our more cautious view, we lower our probability of success for Revita to 35% from 50%, previously" and "now model peak risk-adjusted worldwide sales of ~$490M in 2035 (previously $700M)[.]"

Following the release of the Canaccord Genuity and Morgan Stanley reports, Fractyl's stock price fell $0.125 per share, or 21.37%, to close at $0.46 per share on January 30, 2026.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Lorne, Jang, and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. LORNE AND JANG SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Lorne and Jang should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in this litigation to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by

class members in response to the Notice, and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B)(i)-(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Lorne and Jang satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

**A. Lorne and Jang Are Willing to Serve as Class Representatives**

On August 21, 2026, counsel for the plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Fractyl and other defendants, and advising investors in Fractyl securities that they had until October 20, 2026—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff. *See* Hood Decl., Ex. B.

Lorne and Jang have filed the instant motion pursuant to the Notice, and they have submitted sworn Certifications attesting that they are willing to serve as representatives for the

Class, and to provide testimony at deposition and trial, if necessary. *See* Dkt. No. 1-1; Hood Decl., Ex. C. Accordingly, Lorne and Jang satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

**B. Lorne and Jang Have the "Largest Financial Interest"**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). To the best of their knowledge, Lorne and Jang have the largest financial interest of any Fractyl investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this District. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT) (SN), 2018 WL 3093965, at *1, *4 (S.D.N.Y. June 21, 2018), *objections overruled*, No. 18-CIV-2268 (AT) (SN), 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1-2 (S.D.N.Y. Nov. 13, 2017). Of the *Lax* factors, courts in this District generally emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the

[2] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

PSLRA. *See Nurlybaev*, 2017 WL 5256769, at *1; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

During the Class Period, the Lorne-Goggin Family and Jang, in the aggregate: (1) purchased 163,472 shares of Fractyl common stock; (2) purchased 59,981 net shares of Fractyl common stock; (3) expended $97,275 in net funds on Fractyl common stock; and (4) incurred losses of approximately $64,962. *See* Hood Decl., Ex. A. As such, Lorne and Jang believe that they possess the largest financial interest in the outcome of this litigation within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

**C. Lorne and Jang Otherwise Satisfy Rule 23's Requirements**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23[.]" *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of [the] litigation, only a preliminary showing of typicality and

adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Moreover, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Lorne and Jang.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Lorne and Jang's claims are typical of those of the Class. Lorne and Jang allege, like other Class members, that the Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Fractyl, or by omitting to state material facts necessary to make the statements they did make not misleading. Lorne and Jang, like other Class members, purchased Fractyl securities during the Class Period at prices alleged to have been artificially inflated by the Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Fractyl's share price downward. These shared claims, which are based on the same legal theory

and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

Lorne and Jang are adequate representatives for the Class. As set forth in greater detail below, in Pomerantz, Lorne and Jang have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Lorne is also represented by the Schall, Brown & Schwartz LLP law firm in this Action. There is no evidence of antagonism or conflict between Lorne and Jang's interests and those of the Class. Moreover, Lorne and Jang have submitted sworn Certifications declaring their commitment to protecting the interests of the Class (*see* Dkt. No. 1-1; Hood Decl., Ex. C), and their significant losses incurred as a result of the Defendants' alleged malfeasance demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.

Further, Lorne and Jang constitute an appropriate movant duo of the type routinely appointed to serve as Co-Lead Plaintiffs. *See Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups, and appointing group consisting of six members with the largest financial interest as lead plaintiff);

*Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as Lead Plaintiff is allowable under the PSLRA" and finding a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors as lead plaintiff pursuant to the PSLRA); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).

Lorne and Jang likewise have demonstrated their adequacy because they are a cohesive pair of likeminded investors who have submitted a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Hood Decl., Ex. D. Courts routinely appoint more than one investor as Co-Lead Plaintiffs pursuant to the PSLRA under such circumstances. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

### D. Lorne and Jang Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption favoring Lorne and Jang's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Lorne and Jang's ability and desire to fairly and adequately represent the Class has been discussed above. Lorne and Jang are not aware of any unique defenses the Defendants could raise that would render them inadequate to represent the Class. Accordingly, Lorne and Jang should be appointed Co-Lead Plaintiffs for the Class.

## II. CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class" (*id.* § 78u-4(a)(3)(B)(iii)(II)(aa)). *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, Lorne and Jang have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully

prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Hood Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* *Petrobras* is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Lorne and Jang's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Lorne and Jang's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Lorne and Jang respectfully request that the Court issue an Order: (1) appointing them as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated: October 20, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*

J. Alexander Hood II
Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Stephen Lorne and SeungHo Jang and Proposed Lead Counsel for the Class*

SCHALL, BROWN & SCHWARTZ LLP
David J. Schwartz
274 White Plains Road, Suite 1
Eastchester, New York 10709
Telephone: (914) 206-9742
david@schallfirm.com

*Additional Counsel for Stephen Lorne*

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for Stephen Lorne and SeungHo Jang, certifies that this brief contains 4,011 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on October 20, 2026.

*/s/ J. Alexander Hood II*
J. Alexander Hood II