**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHEN LORNE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

FRACTYL HEALTH, INC., HARITH RAJAGOPALAN, and LISA A. DAVIDSON,

Defendants.

Case 1:26-cv-07167-PAE

CLASS ACTION

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MATHIAS FALKENBERG FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 5

I. THE COURT SHOULD APPOINT FALKENBERG AS LEAD PLAINTIFF ........ 5

A. The Procedure Required by the PSLRA ........ 5

B. Falkenberg is the Most Adequate Lead Plaintiff ........ 6

1. Falkenberg's Motion is Timely ........ 6

2. Falkenberg Believes He Has the Largest Financial Interest in the Relief Sought by the Class ........ 7

3. Falkenberg Meets the Requirements of Fed. R. Civ. P. 23 ........ 7

a. Falkenberg's Claims Are Typical of Those of the Class ........ 7

b. Falkenberg Will Fairly and Adequately Protect the Interests of the Class ........ 8

II. THE COURT SHOULD APPROVE FALKENBERG'S CHOICE OF COUNSEL ... 9

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## CASES

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......... 8

*Kukkadapu v. Embraer S.A.*,
No. 16 CIV. 6277 (RMB), 2016 WL 6820734 (S.D.N.Y. Oct. 20, 2016).......... 7

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) .......... 7

## DOCKETED CASES

*In re Beacon Associates Litigation*,
No. 09-cv-0777 (S.D.N.Y.).......... 10

*City of Austin Police Retirement System v. Kinross Gold Corp. et al.*,
No. 12-cv-01203-VEC (S.D.N.Y.) .......... 10

*Dishion v. Power Solutions International, Inc.*,
Case No. 1:26-cv-03149 (N.D. Ill.) .......... 9

*Ferreira v. Funko, Inc.*,
No. 2:20-cv-02319 (C.D. Cal.) .......... 9

*In re Fannie Mae Securities Litigation*,
No. 04-cv-1639 (D.D.C.) .......... 10

*In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*,
C.A. No. 8145 (Del. Ch.) .......... 10

*Indiana Public Retirement System v. Rivian Automotive, Inc.*,
Case No. 2:24cv04556 (C.D. Cal.) .......... 9

*In re Initial Public Offering Securities Litigation*,
No. 21-MC-92 (S.D.N.Y.) .......... 10

*In re Marsh & McLennan Companies Securities Litigation*,
No. 04-cv-8144 (S.D.N.Y.).......... 10

*In re Origin Materials, Inc. Securities Litigtion*,
Case No. 2:23-cv-01816 (E.D. Cal.).......... 9

*Ouranitsas v. Tupperware Brands Corporation et al.*,
Case No. 6:23cv00511 (M.D. Fla.) ........ 9

*In re Royal Dutch/Shell Transport Securities Litigation*,
No. 04-cv-374 (D.N.J.) ........ 10

*Saye v. NIO Inc. et al.*,
Case No. 1:22cv07252 (S.D.N.Y.) ........ 9

*In re Stellantis N.V. Securities Litigation*,
No. 1:19-cv-06770 (E.D.N.Y.) ........ 9

*Teroganesian v. Southwest Airlines Co. et al.*,
Case No. 4:23cv00115 (S.D. Tex.) ........ 9

*In re Tremont Securities Law, State Law and Insurance Litigation*,
No. 08-cv-11117 (S.D.N.Y.) ........ 10

*Vitiello et al. v. Bed Bath & Beyond, Inc. et al.*,
No. 2:20-cv-04240 (D.N.J.) ........ 9

*Wentz v. Moderna, Inc.*,
Case No. 1:24-cv-12058 (D. Mass.) ........ 9

*Zerbato v. AlloVir, Inc.*,
Case No. 1:24cv10152 (D. Mass.) ........ 9

**STATUTES**

15 U.S.C. § 78u-4 ........ *passim*

Mathias Falkenberg ("Falkenberg") respectfully submits this memorandum of law in support of his motion for: (a) appointment as Lead Plaintiff, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C § 78 *et seq.*; and (b) approval of Falkenberg's selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as Lead Counsel for the litigation.

## PRELIMINARY STATEMENT

Presently pending in this District is the above-captioned securities class action (the "Action") alleging violations of the Exchange Act against Defendants. The Action was brought on behalf of all those (the "Class") who purchased or otherwise acquired Fractyl Health, Inc. ("Fractyl" or the "Company") securities between January 13, 2025 and January 29, 2026, inclusive (the "Class Period").

Under the PSLRA, a class action complaint alleging violations of the Exchange Act triggers statutory requirements for selecting the most adequate plaintiff to lead the action. The presumptive lead plaintiff is the movant that has both the largest financial interest in the litigation and has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.

As set forth more fully herein, Falkenberg satisfies these requirements and should be appointed as Lead Plaintiff in the Action. First, Falkenberg lost $728,819 from his purchases of Fractyl securities during the Class Period. Falkenberg believes his losses constitute the largest financial interest in the Action. Second, Falkenberg satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23 as his claims are typical of the claims of the Class, he has no interests that are antagonistic to the Class, and he will fairly and adequately represent the interests of the Class. Falkenberg has a Master's Degree in economics and finance, lives in Copenhagen,

Denmark, and has been investing in the securities markets for over fourteen years. Additionally, Falkenberg selected experienced and qualified counsel who can adequately represent the Class.

Accordingly, Falkenberg respectfully requests that the Court grant his motion to be appointed as Lead Plaintiff and approve his selection of Bernstein Liebhard LLP as Lead Counsel.

## FACTUAL BACKGROUND

According to the Class Action Complaint ("Compl."), Fractyl is a metabolic therapeutics company that develops therapies for the treatment of type 2 diabetes and obesity. The Company is developing, *inter alia*, the Revita DMR System ("Revita"), an outpatient procedural therapy designed to durably modify duodenal dysfunction, a pathologic consequence of a high fat and high sugar diet. Compl., ¶¶ 2, 26.

During the Class Period, Defendants were highly focused on advancing Revita through Fractyl's "REMAIN-1" study, evaluating Revita's efficacy in maintaining weight loss following the discontinuation of GLP-1 receptor agonist drug therapy. The REMAIN-1 study is designed to include three distinct patient cohorts: (i) the REVEAL-1 Cohort; (ii) the REMAIN-1 Midpoint Cohort; and (iii) the REMAIN-1 Pivotal Cohort. Compl., ¶¶ 3, 26.

At all relevant times, Defendants touted Revita's efficacy as observed in interim data readouts from the REVEAL-1 and REMAIN-1 Midpoint Cohorts, while highlighting data from prior studies that likewise evaluated Revita's ability to reduce weight gain under other circumstances. Defendants variously characterized such data as "groundbreaking", "clinically and statistically significant", and "striking", while highlighting the purported "**clear evidence of Revita activity**". Compl., ¶ 4 (emphasis in original.)

In August and September 2025, on days coinciding with the release of positive data readouts purportedly demonstrating Revita's efficacy potential, Defendants announced public

offerings of Fractyl securities, reaping tens of millions of dollars in proceeds, piggybacking on the hype generated by these purportedly promising results. Compl., ¶¶ 5, 48-57.

The complaint alleges that, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Revita was less effective than Defendants had led investors to believe, and/or operational issues at one or more of the REMAIN-1 Midpoint Cohort's clinical sites compromised the integrity of its efficacy results; and (ii) accordingly, Revita's clinical, regulatory, and commercial prospects were overstated, as was the REMAIN-1 Midpoint Cohort's ability to assess Revita's efficacy. Compl., ¶¶ 6, 58-66.

The truth began to emerge on January 29, 2026, when, during pre-market hours, Fractyl issued a press release announcing six-month data from the REMAIN-1 Midpoint Cohort. The press release disclosed, in relevant part, that "[a]cross the prespecified efficacy population . . . , Revita-treated patients experienced a 4.5% weight regain vs 7.5% in the sham arm at 6 months", representing a significantly more modest efficacy result than previously disclosed results and falling short of investor expectations, while stating that "[t]he Midpoint Cohort was not designed to be sufficiently powered for efficacy analysis[.]" Comp., ¶ 70.

The same day, also during pre-market hours, Fractyl hosted a conference call with investors and analysts to discuss the six-month data from the REMAIN-1 Midpoint Cohort. During the call, Fractyl's Chief Executive Officer Defendant Harith Rajagopalan ("Rajagopalan") indicated that issues at one of the REMAIN-1 Midpoint Cohort study sites, which "had higher-than-expected regain across both arms," were at least partly to blame for the cohort's disappointing six-month efficacy results. Compl., ¶¶ 71-72.

On this news, the price of Fractyl stock fell $1.245 per share, or 68.03%, to close at $0.585 per share on January 29, 2026. Compl., ¶ 73.

The same day, during post-market hours, Canaccord Genuity issued a report on Fractyl, providing additional color on the site-specific issue identified by Defendant Rajagopalan. Specifically, the report cited a "call with mgmt [that] clarified some of the key FAQs around the ‘outlier site'", stating that Fractyl "attribute[d] the variability in the 1 outlier site (out of 6) to a relatively less robust diet and lifestyle counseling program", noting that "[t]his site was the first to enroll and hadn't yet set up a dietary center." Compl., ¶ 74.

Also on January 29, 2026, during post-market hours, Morgan Stanley issued a report on Fractyl, downgrading the Company to an "Equal-weight" from "Overweight" rating and cutting its price target on the Company's stock to $2.00 from $8.00. The report characterized the latest REMAIN-1 Midpoint Cohort study results as "disappointing", noting that the "randomized 6mo results for Revita in weight maintenance showed trends, but fell short of expectations, raising questions." Specifically, the report noted that "Revita patients experienced 4.5% weight regain (+1.5% in open label cohort) vs. 7.5% sham (~10% expected)", which "represents a 40% delta vs. sham, below the 50% threshold, suggesting more modest benefits, though was negatively impacted by a single site." Notwithstanding Defendants' "indication that the results were negatively impacted by a single site," the report concluded that "we take a more cautious view on the potential of Revita and move to the sidelines", and "given our more cautious view, we lower our probability of success for Revita to 35% from 50%, previously" and "now model peak risk-adjusted worldwide sales of ~$490M in 2035 (previously $700M)[.]" Compl., ¶ 75.

On this news, the price of Fractyl stock fell $0.125 per share, or 21.37%, to close at $0.46 per share on January 30, 2026. Compl., ¶ 76.

## ARGUMENT

### I. THE COURT SHOULD APPOINT FALKENBERG AS LEAD PLAINTIFF

#### A. The Procedure Required by the PSLRA

The PSLRA establishes a straightforward sequential procedure for selecting a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish a notice (the "Early Notice") to the class within 20 days of filing the action informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as Lead Plaintiff within 60 days after publication of the Early Notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). Second, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by putative class members in response to an Early Notice by the later of: (i) 90 days after publication of the Early Notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). Finally, in considering any motion to serve as Lead Plaintiff, the Court "shall appoint as lead plaintiff" the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the person that:

i) has either filed the complaint or made a motion in response to an Early Notice;

ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and

iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This presumption "may be rebutted only upon proof" by a putative class member that the presumptively most adequate plaintiff: (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth *infra*, Falkenberg meets the foregoing criteria, and therefore is entitled to the statutory presumption as the most adequate to be appointed as Lead Plaintiff to represent the Class.

**B. Falkenberg is the Most Adequate Plaintiff**

Falkenberg respectfully submits that he is presumptively the "most adequate plaintiff" because he has made a motion in response to an Early Notice, he believes that he has the largest financial interest in the relief sought by the Class, and he otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

**1. Falkenberg's Motion is Timely**

On August 21, 2026, the Early Notice was published via a widely circulated national business-oriented wire service. *See* Ex. A to the Declaration of Timothy J. MacFall, dated October 18, 2026 ("MacFall Decl."). Accordingly, putative class members had until October 20, 2026, to file lead plaintiff motions. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.").

Falkenberg timely files this motion in response to the Early Notice. Falkenberg is also filing herewith a sworn certification, pursuant to 15 U.S.C. § 78u-4(a)(2)(A), attesting to his review of the complaint in the Action and his willingness to serve as representative of the Class, including providing testimony at deposition and trial, if necessary. *See* MacFall Decl., Ex. B. As such, Falkenberg satisfies the first requirement to serve as Lead Plaintiff.

#### 2. Falkenberg Believes He Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the plaintiff or movant with "the largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Falkenberg suffered losses of $728,819 in connection with his purchases of Fractyl securities during the Class Period. *See* MacFall Decl., Ex. C. Falkenberg is not aware of any other movant that has suffered greater losses in Fractyl's securities during the Class Period. Accordingly, Falkenberg believes that he has the largest financial interest in this litigation.

#### 3. Falkenberg Meets the Requirements of Fed. R. Civ. P. 23

"At this stage of the litigation, in determining whether a movant is the presumptive lead plaintiff under the PSLRA, only a *prima facie* showing that the requirements of Rule 23 are met is necessary." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) (emphasis in original). Falkenberg satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are "the only [Rule 23] provisions relevant to a determination of lead plaintiff under the PSLRA." *Id.*

##### a. Falkenberg's Claims Are Typical of Those of the Class

A lead plaintiff movant is typical of other proposed class members under Rule 23 if "its claims…arise from purchases made in reliance on the same alleged misstatements and omissions that the complainants and other movants base their claims on, and they also seek the same relief, based on the same legal theories." *Kukkadapu v. Embraer S.A.*, No. 16 CIV. 6277 (RMB), 2016 WL 6820734, at *2 (S.D.N.Y. Oct. 20, 2016). Falkenberg's claims are typical of the Class in that he suffered the same injury as a result of the same, or substantially the same, course of conduct by

Defendants, and bases his claims on the same, or substantially the same, legal theories as the Class. *Id.*

Here, the questions of law and fact common to the members of the Class and which may affect individual Class members include whether (i) Defendants violated the federal securities laws; and (2) the members of the Class sustained damages and, if so, what is the proper measure of damages. These questions apply equally to Falkenberg as to all members of the Class. Since Falkenberg's claims have the same essential characteristics as those of the other Class members, the typicality requirement is satisfied.

**b. Falkenberg Will Fairly and Adequately Protect the Interests of the Class**

The adequacy requirement, in turn, is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015).

Falkenberg is an adequate Lead Plaintiff. Falkenberg and members of the Class have the same interest: to maximize the recovery from Defendants. Because of Falkenberg's financial stake in the litigation, Class members can be assured that Falkenberg has the incentive to vigorously prosecute the claims. Falkenberg has a Master's Degree in economics and finance, lives in Copenhagen, Denmark, and has been investing in the securities markets for over fourteen years. In sum, based on his educational background and experience, Falkenberg is well-suited to serve as lead plaintiff.

Falkenberg also demonstrated his adequacy through his selection of Bernstein Liebhard as Lead Counsel for the proposed Class. As discussed more fully below, Bernstein Liebhard is highly

qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to successfully prosecute complex securities class action lawsuits both in this District and nationwide.

## II. THE COURT SHOULD APPROVE FALKENBERG'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Bernstein Liebhard has extensive experience prosecuting complex securities class actions, such as this one, and is well qualified to represent the Class. *See* MacFall Decl. Ex. D (Firm Résumé of Bernstein Liebhard). Accordingly, the Court may be assured that by approving Bernstein Liebhard as Lead Counsel, the Class is receiving high-caliber legal representation.

Bernstein Liebhard has frequently been appointed as Lead Counsel or Co-Lead Counsel in securities class action lawsuits since the passage of the PSLRA, and has frequently appeared in major actions in numerous courts throughout the country and in this district. Some of the firm's most recent Lead Counsel appointments include *Dishion v. Power Solutions International, Inc.*, Case No. 1:26-cv-03149 (N.D. Ill.); *Shouse v. Tempus AI, Inc.*, Case No. 1:25-cv-06534 (N.D. Ill.); *Wentz v. Moderna, Inc.*, Case No. 1:24-cv-12058-IT (D. Mass.); *Indiana Public Retirement System v. Rivian Automotive, Inc.*, Case No. 2:24cv04556 (C.D. Cal.); *Zerbato v. AlloVir, Inc.*, Case No. 1:24cv10152 (D. Mass.); *Teroganesian v. Southwest Airlines Co. et al.*, Case No. 4:23cv00115 (S.D. Tex.); *In re Origin Materials, Inc. Securities Litigtion*, Case No. 2:23-cv-01816 (E.D. Cal.); *Ouranitsas v. Tupperware Brands Corporation et al.*, Case No. 6:23cv00511 (M.D. Fla.); *Saye v. NIO Inc. et al.*, Case No. 1:22cv07252 (S.D.N.Y.); *In re IronNet, Inc. Securities Litigation*, No. 1:22-cv-00449 (E.D. Va.); *Ferreira v. Funko, Inc.*, No. 2:20-cv-02319 (C.D. Cal.); *Valdes v. Kandi Technologies Group, Inc.*, No. 2:20-cv-06042 (E.D.N.Y.); *Vitiello et al. v. Bed*

*Bath & Beyond, Inc. et al.*, No. 2:20-cv-04240 (D.N.J.); and *In re Stellantis N.V. Securities Litigation*, No. 1:19-cv-06770 (E.D.N.Y.).

*The National Law Journal* has recognized Bernstein Liebhard for thirteen years as one of the top plaintiffs' firms in the country. Bernstein Liebhard was also listed for fifteen consecutive years in *The Legal 500*, a guide to the best commercial law firms in the United States, as well as in *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* for four consecutive years. Bernstein Liebhard was also selected to the *National Law Journal's* annual "America's Elite Trial Lawyers" list for three consecutive years.

Some of Bernstein Liebhard's outstanding successes include:

- *In re Beacon Associates Litigation*, No. 09-cv-0777 (LBS) (AJP) (S.D.N.Y. 2013) ($219 million settlement);
- *In re Fannie Mae Securities Litigation*, No. 04-cv-1639 (FJL) (D.D.C. 2013) ($153 million settlement);
- *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-cv-11117 (TPG) (S.D.N.Y. 2011) (settlement in excess of $100 million);
- *In re Marsh & McLennan Companies Securities Litigation*, No. 04-cv-8144 (CM) (S.D.N.Y. 2009) ($400 million settlement);
- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-cv-374 (JAP) (D.N.J. 2008) (U.S.-based settlement amounting to $166.6 million);
- *In re Freeport-McMoRan Copper & Gold, Inc. Derivative Litigation*, C.A. No. 8145-VCN (Del. Ch. 2015) ($153.5 million settlement in a shareholder derivative action); and
- *City of Austin Police Retirement System v. Kinross Gold Corp. et al.*, No. 12-cv-01203-VEC (S.D.N.Y. 2012) ($33 million settlement).

Further, Bernstein Liebhard partner Stanley Bernstein served as Chairman of the Executive Committee in *In re Initial Public Offering Securities Litigation*, No. 21-MC-92 (SAS) (S.D.N.Y.

2009), one of the largest consolidated securities class actions ever prosecuted, resulting in a $586 million settlement.

## CONCLUSION

For the foregoing reasons, Falkenberg respectfully requests that this Court: (1) appoint him as Lead Plaintiff for the Action, and all subsequently-filed, related actions; and (2) approve Falkenberg's selection of Bernstein Liebhard as Lead Counsel for the litigation.

Dated: October 20, 2026

Respectfully submitted,

*/s/ Timothy J. MacFall*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Timothy J. MacFall
Jeffrey McEachern
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: lhasson@bernlieb.com
tmacfall@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Mathias Falkenberg and Proposed Lead Counsel for the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Mathias Falkenberg certifies that this Memorandum of Law in support of Falkenberg Motion contains 2,987 words and is in compliance with the word-count limitation of Local Civil Rule 7.1(c).

Dated: October 20, 2026

*/s/ Timothy J. MacFall*
Timothy J. MacFall

**CERTIFICATE OF SERVICE**

I, Timothy J. MacFall, hereby certify that on October 20, 2026, a true and correct copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all parties with an email address of record who have appeared and consented to electronic service in this action.

Dated: October 20, 2026

*/s/ Timothy J. MacFall*
Timothy J. MacFall